1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  GARY W. SCHONS
   Senior Assistant Attorney General
3  PAMELA RATNER SOBECK
   Supervising Deputy Attorney General
4  ANTHONY DA SILVA
   Deputy Attorney General
5  CHRISTOPHER P. BEESLEY, State Bar No. 236193
   Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone:  (619) 645-2567
     Fax:  (619) 645-2581
9    Email:  Christopher.Beesley@doj.ca.gov

10  Attorneys for Respondent

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14  **Dennis J. Grimes,**                          08-0854 J (CAB)
                              Petitioner,
15                                               **MEMORANDUM OF**
              **v.**                             **POINTS AND**
16                                               **AUTHORITIES**
    **Matthew Cate,**
17                             Respondent.        Judge:  The Honorable Cathy Ann
                                                          Bencivengo
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

|  | | Page |
|---|---|---|
| **STATEMENT OF THE CASE** | | 1 |
| **STATEMENT OF FACTS** | | 4 |
| **ARGUMENT** | | 5 |
| I. | **THE ANTI-TERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 GOVERNS THIS CASE** | 5 |
| II. | **THE TRIAL COURT PROPERLY ADVISED PETITIONER OF THE DANGERS OF SELF-REPRESENTATION** | 7 |
| III. | **PETITIONER'S CLAIM THAT HE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE SELF-REPRESENTATION IS PROCEDURALLY BARRED** | 10 |
| | A.   Procedural Background | 10 |
| | B.   Discussion | 11 |
| IV. | **PETITIONER HAS FAILED TO MAKE A SHOWING THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL** | 13 |
| | A.   Procedural Background | 13 |
| | A.   Discussion | 14 |
| V. | **PETITIONER'S CLAIM THAT HIS SENTENCE VIOLATED *CUNNINGHAM* IS PROCEDURALLY BARRED** | 16 |
| **CONCLUSION** | | 18 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bennett v. Mueller*
322 F.3d 573 (9th Cir. 2003)                                          12

*Blakely v. Washington*
542 U.S. 296
124 S. Ct. 2531
159 L. Ed. 2d 403 (2004)                                              2

*Coleman v. Thompson*
501 U.S. 722
111 S. Ct. 2546
115 L. Ed. 2d 640 (1989)                                          11, 17

*Cunningham v. California*
549 U.S. 270
127 S. Ct. 856
166 L. Ed. 2d  856 (2007)                                             2

*Faretta v. California*
422 U.S. 806
95 S. Ct. 2525
45 L. Ed. 2d 562 (1975)                                             2, 7

*Fields v. Calderon*
125 F.3d 757  (9th Cir. 1997).                                       11

*Fitzpatrick v. Wainwright*
800 F.2d 1057 (11th Cir. 1986)                                      7, 9

*Gaston v. Palmer*
417 F.3d 1030 (9th Cir. 2005)                                        17

*Harris v. Reed*
 489 U.S. 255
109 S. Ct. 1038
103 L. Ed. 2d 308 (1989)                                          11, 17

*Hunter v. Aispuro*
982 F.2d 344  (9th Cir. 1991)                                        11

*In re Dixon*
41 Cal.2d 756
264 P.2d 513 (1956)                                                   3

**TABLE OF AUTHORITIES  (continued)**

1

**Page**

2

3   *In re Robbins*
    18 Cal.4th 770
    Cal. Rptr. 2d 153
4   959 P.2d 311 (1998)                                          4,12

5   *Jones v. Barnes*
    463 U.S. 745
6   103 S. Ct. 3308
7   77 L. Ed. 2d 987 (1983)                                       15

8   *Lambert v. Blodgett*
    393 F.3d 943 (9th Cir. 2004)                                   6

9   *Lindh v. Murphy*
    521 U.S. 320
10  117 S. Ct. 2059
11  138 L. Ed. 2d 481 (1997)                                      5

12  *Lockyer v. Andrade*
    538 U.S. 63
    123 S. Ct. 1166
13  155 L. Ed. 2d 144 (2003)                                      6

14  *Lopez v. Thompson*
15  202 F.3d 1110 (9th Cir. 2000.)                            7, 9, 10

16  *Miller-El v. Cockrell*
    537 U.S. 322
17  123 S. Ct.  1029
    154 L.Ed.  2d 931 (2003)                                      4

18  *Noltie v. Peterson*
19  9 F.3d 802 (9th Cir. 1993)                                   12

20  *O'Dell v. Thompson*
    502 U.S. 995
21  112 S. Ct. 618
    116 L. Ed. 2d 639 (1991)                                     11

22  *People v. Duvall*
    9 Cal.4th 464
23  37 Cal. Rptr. 2d 259
24  886 P.2d 1252 (1995)                                          2

    *People v. Lopez*
25  71 Cal.App.3d 568
    138 Cal. Rptr. 36 (1977)                                      8
26

27  *Poland v. Stewart*
    169 F.3d 573 (9th Cir. 1998)                                 17

28

### TABLE OF AUTHORITIES  (continued)

**Page**

*Rompilla v. Beard*
545 U.S. 374
125 S. Ct. 2456
162 L. Ed. 2d 360 (2005)                                           15

*Sawyer v. Whitley*
505 U.S. 333
120 L. Ed. 2d 269
112 S. Ct. 2514 (1992)                                             17

*Smith v. Murray*
477 U.S. 527
106 S. Ct. 2661
91 L. Ed. 2d 434 (1986)                                            15

*Strickland v. Washington*
466 U.S. 668
104 S. Ct. 2052
80 L. Ed. 2d 674 (1984)                                            13

*Sumner v. Mata*
449 U.S. 539
101 S. Ct. 764
66 L. Ed. 2d 722 (1981)                                             4

*Taylor v. Maddox*
366 F.3d 992 (9th Cir. 2004)                                        6

*U.S. v. McDowell*
814 F.2d 245  (6th Cir. 1987)                                      7, 9

*United States v. Kimmel*
672 F.2d 720 (9th Cir. 1982)                                       7, 9

*Weaver v. Thompson*
197 F.3d 359, 362 (9th Cir. 1999)                                   5

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                            6

*Ylst v. Nunnemaker*
501 U.S. 797
111 S. Ct. 2590
115 L. Ed. 2d 706 (1991)                                          6, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Statutes**

28 United States Code
§ 2254(d)(1)                                    6
§ 2254(d)(2                                     6
§ 2254(e)(1)                                    6

Penal Code
§ 136.1, subd. (b)(1)                           1
§ 236, subd. (a)                                1
§ 237, subd. (a)                                1
§ 243, subd. (d)                                1
§ 261, subd. (a)(2)                             1
§ 289, subd. (a)(1)                             1

08-0854 J (CAB)

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  GARY W. SCHONS
   Senior Assistant Attorney General
3  PAMELA RATNER SOBECK
   Supervising Deputy Attorney General
4  ANTHONY DASILVA
   Deputy Attorney General
5  CHRISTOPHER P. BEESLEY, State Bar No. 236193
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2567
    Fax: (619) 645-2581
9   Email: Christopher.Beesley@doj.ca.gov

10 Attorneys for Respondent

11          IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 | **Dennis J. Grimes,**              | 08-0854 J (CAB)

15 |                        Petitioner, | **MEMORANDUM OF**
                                         **POINTS AND**
16 |        v.                          | **AUTHORITIES**

17 | **Matthew Cate,**                  | Judge:  The Honorable
                                                 Cathy Ann
18 |                        Respondent. | Bencivengo

19

20              **STATEMENT OF THE CASE**

21          On July 6, 2005, a jury in San Diego County convicted Petitioner of false

22 imprisonment (count 2; Cal. Pen. Code §§ 236/237, subd. (a)), rape (count 3; Cal. Pen. Code § 261,

23 subd. (a)(2)), aggravated battery (lesser included offense to count 4; Cal. Pen. Code § 243, subd. (d)),

24 rape by a foreign object (count 6; Cal. Pen. Code § 289, subd. (a)(1)), and attempting to dissuade a

25 witness from reporting a crime (count 8; Cal. Pen. Code § 136.1, subd. (b)(1)).  (Lodgment 1

26 [Clerk's Transcript ("CT")] 1 CT at 242-250; 2 CT at 321-331; Lodgment 2 [Reporter's Transcript

27 ("RT")] 7A RT at 889-891.)  On August 3, 2005, the court sentenced Petitioner to 17 years 4 months

28 in prison.  (2 CT at 291, 334.)

1     On August 9, 2005, only four days after entry of judgment, Petitioner filed his first state

2 habeas petition in the San Diego County Superior Court. He alleged that his right to effectively

3 represent himself was impinged by the trial court's order revoking his jailhouse telephone privileges.

4 He asserted that this order precluded him from contacting his defense investigator and legal runner

5 in preparation for his defense. (Lodgment 8.)

6     While the state habeas petition was pending, Petitioner field a notice of appeal in the

7 Fourth District Court of Appeal, Division One, on September 27, 2005. Petitioner raised three

8 principal issues on direct appeal: 1) the court erred in granting his *Faretta*[1] motion to represent

9 himself because it failed to adequately advise him of the dangers of self-representation; 2) the

10 evidence was insufficient for the jury to convict him of rape; and 3) the court erred in imposing full

11 consecutive sentences for the rape and aggravated battery convictions rather than one-third the

12 midterm and in imposing upper term and consecutive sentences in violation of *Blakely*.[2] (Lodgment

13 3 [Appellant's Opening Brief (AOB)].)

14     On October 3, 2005, the Superior Court denied the first state habeas petition. The court

15 concluded that Petitioner had failed to meet his burden of setting forth a prima facie statement of

16 facts that would entitle him to relief. In other words, "[p]etitioner's conclusory allegations alone

17 [did] not provide a basis for habeas relief" under *Duvall*.[3] (Lodgment 9.) Petitioner then raised this

18 claim in the Court of Appeal by filing his next state habeas petition.

19     The Court of Appeal considered Petitioner's direct appeal and state habeas petition

20 together and rejected all of his claims in two separate opinions filed on October 24, 2006. As to the

21 direct appeal, the court rejected each of his claims and affirmed the judgment in full. However, the

22 court noted that although it rejected Petitioner's upper-term sentencing error claim, *Cunningham*[4]

23 was still pending in the United States Supreme Court. As to the habeas petition, the court concluded

24 _____

25     1. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)

26     2. *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)

27     3. *People v. Duvall*, 9 Cal.4th 464, 474, 37 Cal. Rptr. 2d 259, 886 P.2d 1252 (1995)

28     4. *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007)

1  that Petitioner's effective self-representation claim was procedurally barred under *In re Dixon*[5]

2  because Petitioner had failed to raise the issue on direct appeal. (Lodgments 5 and 10.)

3      Petitioner raised his direct appeal claims before the California Supreme Court in his

4  petition for review. (Lodgment 6.)  The Supreme Court denied the petition on January 3, 2007,

5  without prejudice to any relief Petitioner might be entitled following the United States Supreme

6  Court's decision in *Cunningham*. (Lodgment 7.)

7      Petitioner filed his next state habeas petition in the California Supreme Court on February

8  23, 2007. In this petition, he again asserted that his right of effective self-representation was violated

9  when the trial court revoked his jailhouse telephone privileges. (Lodgment 11.) On July 18, 2007,

10  the high court denied the petition, citing *In re Dixon* and *Duvall*. (Lodgment 12.)

11      During the pendency of his state habeas petition in the Supreme Court, Petitioner filed yet

12  another state habeas petition in Superior Court on June 29, 2007.  In this petition, he alleged that

13  appellate counsel was ineffective for failing to raise, in the direct appeal, his effective self-

14  representation claim. (Lodgment 13.) The Superior Court denied this second petition on August 24,

15  2007.  The court issued a detailed opinion explaining why Petitioner's claim failed on its merits.

16  (Lodgment 14.)

17      Undeterred, Petitioner filed his next state habeas petition in the Court of Appeal, on

18  September 28, 2007.   In this petition he again asserted the claim that appellate counsel was

19  ineffective. (Lodgment 15.) On January 24, 2008, the Court of Appeal issued an opinion rejecting

20  the claim on its merits.  (Lodgment 16.)  Petitioner then sought review of this decision in the

21  California Supreme Court. (Lodgment 17.)  The high court denied review on March 12, 2008.

22  (Lodgment 18.)

23      Meanwhile, Petitioner filed his last state habeas petition in the Superior Court on January

24  11, 2008.  In this petition, he asserted that his upper-term sentence violated *Cunningham*.

25  (Lodgment 19.) On February 22, 2008, the Superior Court rejected the claim, explaining that it was

26  procedurally barred under *In re Clark*, 5 Cal.4th 750, 767-775, 21 Cal. Rptr. 2d 509, 855 P.2d 729

27  

28      5. *In re Dixon*, 41 Cal.2d 756, 264 P.2d 513 (1956)

1   (1993) and *In re Robbins*, 18 Cal.4th 770, 780, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998).

2   (Lodgment 20.)

3          Petitioner filed the instant Petition for Writ of Habeas Corpus on May 12, 2008.  On May

4   15, 2008 this Court ordered Respondent to file an Answer to the Petition.

5                              **STATEMENT OF FACTS**[6]

6          In 2004 Grimes and Debora A. began a relationship. On October 23, contrary to
          Debora's wishes, Grimes forcibly inserted a foreign object in her vagina.  She told
7          him to stop, stood up, and called 911. Debora screamed as the dispatcher answered,
          but Grimes hung up the telephone.  When the dispatcher called back, Grimes
8          answered and said they were just playing.  However, Debora, crying and upset, told
          the dispatcher she and Grimes had been in an argument.  The dispatcher sent police
9          officers to Grimes's apartment.  Before the officers entered the apartment, they saw
          Grimes grab Debora by the wrists and point a finger in her face.  Grimes threatened
10         Debora that if she talked to police, he would tell federal authorities about her family's
          illegal immigration status. He also threatened to kill her.  After the officers finally
11         obtained entry, they observed red marks on Debora's neck and discolorations on her
          wrists and forearms.  Debora told the officers the marks on her neck occurred when
12         Grimes grabbed her to prevent her from leaving.

13

14         On March 25, 2005, after Debora's work shift, she reluctantly accompanied Grimes
          to his apartment.  She told him she needed to be home by 8:30 p.m.  When that time
15         came, she expressed her wish to go home.  Grimes refused to let her leave, first
          tripping her and then blocking and locking the door.  He refused to allow her to make
16         any telephone calls and disconnected the telephone.  He told her that she was going
          to spend the night with him.  She said she would sleep in the living room, but he said
17         she was going to sleep with him in the bedroom.  He told her take off her clothes
          except for her panties and gave her a T-shirt to wear with her panties.  Debora told
18         him she did not want to have sex that night.  Grimes asked her to have sex with him.
          She told him, "No."  He inserted his penis in her vagina.

19         During intercourse, Debora told him to stop.  She was afraid to, and did not,
          physically resist him, because when she had done so on a prior occasion he
20         banged her head against the floor.

21         After Grimes ejaculated inside Debora's vagina, he began to fall asleep. She got up
          and tried to leave.  However, he heard her and brought her back to bed.  A few hours
22         later, when she knew he was asleep, she unlocked the front door and ran into the
          alley.  Grimes ran after and caught her in the alley.  He tried to force her to return to

23

_____

24         6.  The Statement of Facts is taken directly from California Court of Appeal's unpublished
25   opinion. (Opinion at 2-5.)  *See, e.g.*, 28 U.S.C. § 2254(e)(1) (the state court's determination of the
     facts is presumed to be correct); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154
26   L.Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and
     convincing evidence to the contrary"); *Sumner v. Mata*, 449 U.S. 539, 546-48, 101 S. Ct. 764; 66
27   L. Ed. 2d 722 (1981) (appellate courts can make factual findings that are entitled to deference).  A
28   statement of facts, containing record citations, is also available in the Respondent's Brief.
     (Lodgment 4 at 2-5.)

his apartment. When she began screaming, he told her to be quiet because the police would come. He threatened to kill her and, when she continued screaming, he bit her cheek. She nevertheless continued screaming, and he bit her lip, causing it to bleed. He then fled.

After Grimes was arrested, he called Debora several times from jail and begged her to deny that he raped or bit her. He also threatened to have his family members harm her and her loved ones if she did not recant.

On April 27, an information was filed charging Grimes with the offenses described *ante*. On April 28, Grimes made a *Faretta* motion requesting the trial court allow him to represent himself at trial. The court granted his motion. At trial, after the testimonies of Debora and other percipient and expert witnesses, Grimes testified in his defense, admitting he bit Debora's lip but denying all of the other charges against him. Regarding the October 2004 incident, he admitted rubbing Debora's clitoris, but denied inserting his finger into her vagina. He testified that when he told her not to speak to police that night, he was merely informing her of her right to not talk with police. Regarding the March 2005 incident, he testified that when Debora asked him to stop during intercourse, he did so. On cross-examination, he could not explain why his semen was found inside Debora's vagina.

(Opinion at 2-5.)

# ARGUMENT
# I.

## THE ANTI-TERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 GOVERNS THIS CASE

Petitioner filed his petition after the effective date of, and is thus subject to, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See e.g.*, *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under AEDPA, a petition for writ of habeas corpus must demonstrate that the state court's adjudication on the merits resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of facts in light of the evidence presented." 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses contained in 28 U.S.C. § 2254(d) have distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A decision is "contrary to" United States Supreme Court authority if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but reaches a different result. *Id.* at 413-14. A decision is an "unreasonable application" of clearly established federal law if the state

court identifies the correct governing legal principle but unreasonably applies that principle to the facts of that case. *Id.* at 413. Moreover, the application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).

Additionally, when a state court does not find a constitutional violation, a federal court may still grant relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under AEDPA, a state court's factual findings are entitled to a presumption of correctness. Therefore, a Petitioner must prove the state court's factual findings erroneous by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir. 2004). Mixed questions of fact and law are reviewed under the "contrary to" and "unreasonable application" clauses in 28 U.S.C. § 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004). A state court's factual findings underlying its conclusion on mixed issues are accorded a presumption of correctness. *Id.*

Because the California Supreme Court denied Petitioner's direct appeal petition for review and his state habeas corpus petition, this Court applies the AEDPA standard of review in to the last reasoned opinions of the California state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-804, 111 S. Ct. 2590; 115 L. Ed. 2d 706 (1991) ("where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"). Accordingly, this Court looks at the Court of Appeal's opinions from the direct appeal and habeas petitions.

## II.
## THE TRIAL COURT PROPERLY ADVISED PETITIONER OF THE DANGERS OF SELF-REPRESENTATION

Petitioner asserts that the trial court's *Faretta* warnings were inadequate because the court incorrectly stated that his maximum prison exposure was 27 years and six months rather than 28 years and two months -- merely eight months longer. (Ground 1.) The claim fails on its merits because the trial court fully and adequately advised Petitioner of the dangers of self-representation

///

08-0854 J (CAB)

6

1  such that Petitioner chose to represent himself with his eyes open. The state courts properly applied
2  the United States Supreme Court's precedent in disposing of this claim.

3        It is well settled that under the Sixth Amendment, a criminal defendant has the right of
4  self-representation. However, in the exercise of that right, the defendant waives his right to counsel
5  and all the benefits that come as a result of such professional representation. *Faretta v. California*,
6  422 U.S. at 807, 835. "In order to represent himself, the accused must 'knowingly and intelligently'
7  forgo those relinquished benefits." *Id.* at 835. The defendant "should be made aware of the dangers
8  and disadvantages of self-representation, so that the record will establish that 'he knows what he is
9  doing and his choice is made with eyes open.'" *Ibid.*

10       Although a trial court should warn a defendant of the dangers of self-representation,
11 "[n]either the Constitution nor *Faretta* compels the [trial] court to engage in a specific colloquy with
12 the defendant." *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000.) Rather, the test of a valid
13 waiver of counsel is not whether *specific* warnings or advisements were given but whether the record
14 as a whole demonstrates that the defendant understood the disadvantages of self-representation,
15 including the risks and complexities of the particular case. *See id.* at 1118; *see also*, *U.S. v.*
16 *McDowell*, 814 F.2d 245, 249 (6th Cir. 1987); *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th
17 Cir. 1986); *United States v. Kimmel*, 672 F.2d 720, 722 (9th Cir. 1982).

18       Here, Petitioner had a high school degree and could read and write in English. He was
19 informed, both orally and in writing, of the dangers and disadvantages of self-representation. He
20 acknowledged, both orally and in writing, his awareness of those dangers and disadvantages, and
21 expressed an unequivocal desire, despite those dangers and disadvantages, to represent himself. The
22 entire record shows that Petitioner knowingly and intelligently waived his right to counsel and
23 demonstrates that Petitioner knowingly and intelligently sought to exercise his right to self-
24 representation.

25       Indeed, the Court of Appeal observed that the trial court fully ensured Petitioner was aware
26 of the dangers of self-representation:

27            On April 28, Grimes appeared with his appointed counsel for his arraignment
             on the information. At the hearing, Grimes made a *Faretta* motion to waive his
28           right to counsel and exercise his right to represent himself. Grimes's appointed

08-0854 J (CAB)

counsel submitted to the trial court a *Lopez*[7] waiver form initialed and signed by Grimes. That form stated: [¶] "The defendant wishes to exercise the right to self-representation without the help of an attorney. The defendant acknowledges, by initialing each item, that advice was received concerning: [¶] 1. Offenses charged: P.C. §§ 207(a); 236/237; 261(a)(2); 203; 664/207(a); 289(a)(1); 236/237; 136.1(b)(1); 166.4(misd)[.] [¶] 2. The maximum punishment(s) that can be imposed upon conviction for the offenses(s): 27 years, 6 months[.] ... [¶] 12. The Court advised the defendant that self-representation is almost always unwise and that persons exercising such right may conduct the case in a manner harmful to themselves. [¶] I acknowledge inquiry and receipt of advice concerning the above, and by my signature request to represent myself.

The trial court addressed Grimes: "Mr. Grimes, you're facing some real serious charges here. [Do] [y]ou actually want to be your own attorney?" Grimes replied: "Yes, sir." The court asked: "Have you had a chance to talk to [your appointed counsel] about that?" Grimes replied: "Yes, I have." The court asked: "Did he try to talk you out of it?" Grimes replied: "Yes, he did." The court continued: [¶] "Well, he should have. I'm going to take a shot at that now, too. But first let me ask [you] about this form. [P] I've got the *Lopez* waiver form here. It's got paragraphs on both sides with boxes that have initials in them. Are those your initials?"

Grimes replied: "Yes, they are." The court asked: "Did you go over the whole form on both sides with your attorney?" Grimes replied: "Yes." The court asked: "And when you put your initials in the boxes, were you, essentially, telling me that you read the paragraph and you understood it?" Grimes replied: "Yes, I have." Grimes also confirmed that he had signed the back of the form. The court asked: "Did you understand all of it?" Grimes replied: "Yes, I did." The court then learned from Grimes that he had a high school diploma, was able to read and write, and had never been treated for a mental health condition. The court then noted:

"I'll say, for the record, just talking with Mr. Grimes here, he seems clearheaded, able to stay on point, and I don't detect anything that would give me pause about his ability to make this decision except for the fact that it's such a bad decision. [¶] "And I just want to -- I'm not going to cover all the stuff on this form because you told me you understood it, but I need to be clear that you understand that you're taking on a complex job with huge stakes. [¶] The rest of us here went to college and then law school and then trained for a dozen years or more before they handled a case like this. You're going to be going into court against somebody who is trained, experienced and skilled, and you're not." [¶] Grimes replied: "Yes. I understand." The court continued:

"You're going to be expected, as a pro per -- you've asked to be an attorney. You're going to be treated like an attorney, which means you're going to be expected to know the rules, how to make motions, how to make objections, how to file papers. If you don't follow the rules, you'll get the treatment an attorney does. That is, the motion may well be denied even though there may be some merit to it." [¶] Grimes replied: Yes. I understand." The court continued:

"The objection may be overruled if you're not able to articulate the reason for

---

7. *People v. Lopez*, 71 Cal.App.3d 568, 138 Cal. Rptr. 36 (1977)

1   it even though somebody who knew the rules might be able to find a good
    reason for that. Understand that?" [¶] Grimes replied: "Yes, I do." The court
2   continued: "You're not going to get any special treatment in the jail other than
    what's given to all the pro pers." Grimes replied: "Yes. I understand that."
3   The court asked: [¶] "[Is there] anything I can do to talk you out of this? I
    actually kind of hate to see people do this because I -- [99] times out of [100],
4   in my experience -- and it's a number of years of experience -- people who do
    this hurt themselves dramatically because they're ignorant of what they're
5   doing."

6   Grimes replied: "Yes. I do understand that it's a very complex and dangerous
    step that I am taking, but I am prepared to take that responsibility." Grimes
7   confirmed that he knew he had the right to an attorney, but stated he is "actually
    going to waive that right." The trial court then granted Grimes's *Faretta* motion
8   to represent himself.

9   (Opinion at 7-10.)

10      Manifestly, the trial court engaged in a very comprehensive dialogue with Petitioner in an

11  effort to help him understand the gravity of waiving his right to counsel.

12      In rejecting Petitioner's claim on direct appeal, the Court of Appeal articulated that the

13  "test of a valid waiver of counsel is not whether specific warnings or advisements were given but

14  *whether the record as a whole demonstrates that the defendant understood the disadvantages of self-*

15  *representation*, including the risks and complexities of the particular case." (Opinion at 11, original

16  italics.) Clearly, the Court of Appeal applied the correct standard in evaluating whether the trial

17  court adequately advised Petitioner of the dangers of self-representation. See *Lopez v. Thompson*,

18  202 F.3d at 1117; *U.S. v. McDowell*, 814 F.2d at 249; *Fitzpatrick v. Wainwright*, 800 F.2d at 1065;

19  *United States v. Kimmel*, 672 F.2d at 722.

20      Finally, in rejecting Petitioner's claim that he was incorrectly advised that his maximum

21  prison exposure was 27 years and six months rather than 28 years and two months, the Court of

22  Appeal noted that Petitioner had failed to set forth any authority whatsoever that a trial court is

23  required to state "the *precise* maximum possible punishment of charges against him ... to validly

24  waive the right to counsel." (Opinion at 13, original italics.) The court further observed that the

25  eight month discrepancy in the maximum prison exposure was insignificant in light of the lengthy

26  potential sentence Petitioner knew he was facing. (Opinion at 14.) As stated, specific warnings are

27  not constitutionally mandated. *Lopez v. Thompson*, 202 F.3d at 1117.

28  ///

08-0854 J (CAB)

1    In sum, the trial court properly discharged its duties under established Supreme Court

2   precedent in advising Petitioner of the dangers of self-representation. The Court of Appeal properly

3   disposed of Petitioner's claim by reasonably applying the controlling Supreme Court authority.

4   Consequently, this Court should reject Petitioner's claim in full.

5                                             **III.**

6   **PETITIONER'S CLAIM THAT HE WAS DENIED HIS SIXTH**
    **AMENDMENT RIGHT TO EFFECTIVE SELF-REPRESENTATION IS**
7   **PROCEDURALLY BARRED**

8    Petitioner contends that the trial court violated his right to effectively prepare for his own

9   defense and to effectively represent himself when the court revoked his jailhouse telephone

10  privileges. (Ground 2). The claim is procedurally barred.

11  **A.    Procedural Background**

12   Petitioner first raised this claim in the Superior Court, four days after entry of judgment,

13  in his first state habeas petition.  The Superior Court concluded that Petitioner's claim was

14  conclusory and failed to establish a prima facie showing of facts that entitled him to relief.

15  Consequently, the court denied the petition, citing *Duvall*.

16   Petitioner then raised the claim in the Court of Appeal, again through a state habeas

17  petition. The Court of Appeal rejected the claim, explaining that it was procedurally barred because

18  Petitioner had failed to raise it in his direct appeal.  The court cited *In re Dixon*.

19   Petitioner raised the claim in the California Supreme Court in another state habeas petition.

20  The California Supreme Court summarily rejected the claim, citing both *Duvall* and *In re Dixon*.

21  **B.    Discussion**

22   A federal court will not review a Petitioner's claims if the state court has denied relief of

23  those claims pursuant to a state law that is independent of federal law and adequate to support the

24  judgment. *Ylst v. Nunnemaker*, 501 U.S. at 801; *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111

25  S. Ct. 2546, 115 L. Ed. 2d 640 (1989).  A state court's refusal to hear the merits of a claim because

26  of a petitioner's failure to follow a state procedural rule is considered a denial of relief on

27  independent and adequate state grounds. *Harris v. Reed*, 489 U.S. 255, 260-61, 109 S. Ct. 1038, 103

28  ///

1    L. Ed. 2d 308 (1989). This doctrine of procedural default is based on the concerns of comity and

2    federalism. *Coleman*, 501 U.S. at 730-32.

3         There are limitations as to when a federal court should invoke procedural default and

4    refuse to evaluate the merits of a claim because the Petitioner violated a state's procedural rules.

5    Procedural default can only block a claim in federal court if the state court "clearly and expressly

6    states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. at 263. For

7    California Supreme Court decisions, this means the Court must specifically have stated that it denied

8    relief on a procedural ground. *Ylst v. Nunnemaker*, 501 U.S. at 803. If the California Supreme Court

9    denies a Petitioner's claims without any comment or citation, the federal court must consider that

10    it is a decision on the merits. *Hunter v. Aispuro*, 982 F.2d 344, 347-48 (9th Cir. 1991). Here, the

11    California Supreme Court cited *Dixon* and *In re Duvall* as the procedural bars it was implementing.

12         Additionally, a federal court may only impose a procedural bar on claims if the procedural

13    rule that the state used to deny relief is "firmly established and regularly followed." *O'Dell v.*

14    *Thompson*, 502 U.S. 995, 998, 112 S. Ct. 618, 116 L. Ed. 2d 639 (1991). The state procedural rule

15    used must be clear, consistently applied, and well-established at the time of the Petitioner's

16    purported default. *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997).

17         As stated above, federal courts "will not review a question of federal law decided by a state

18    court if the decision of that court rests on a state law ground that is independent of the federal

19    question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. at 729. If the

20    court finds an independent and adequate state procedural ground, "federal habeas review is barred

21    unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or

22    demonstrate that the failure to consider the claims will result in a fundamental miscarriage of

23    justice." *Noltie v. Peterson*, 9 F.3d 802, 804-805 (9th Cir. 1993); *Coleman v. Thompson*, 501 U.S.

24    at 750.

25         In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit analyzed the burden

26    of proof in proving procedural default, explaining that "[o]nce the state has adequately pled the

27    existence of an independent and adequate state procedural ground as an affirmative defense, the

28    burden to place that defense in issue shifts to the Petitioner. The Petitioner may satisfy this burden

1  by asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

2  including citation to authority demonstrating inconsistent application of the rule. Once having done

3  so, however, the ultimate burden is the state's." *Id.* at 586.

4        In California, *In re Dixon* bars state habeas review of claims that could have been, but were

5  not raised on direct appeal from conviction. *In re Dixon*, 41 Cal.2d at 760. State "habeas corpus

6  may not be used instead of an appeal to review determinations of fact made upon conflicting

7  evidence after a fair trial. [Citation.] Likewise, the writ is not available to correct errors or

8  irregularities relating to ascertainment of the facts when such errors could and should have been

9  raised by appeal." *Ibid.* The Ninth Circuit has held that the *Dixon* bar is an adequate and

10  independent procedural bar in cases in which the direct appeal post dates *In re Robbins*, 18 Cal. 4th

11  770, 811 (1998). *Bennett v. Mueller*, 322 F.3d at 582-583. Petitioner's direct appeal here occurred

12  in 2006 -- long after *Robbins*.

13        *Duvall* states the requirement that the "petition should both (i) state fully and with

14  particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably

15  available documentary evidence supporting the claim, including pertinent portions of trial transcripts

16  and affidavits or declarations. Conclusory allegations made without any explanation of the basis for

17  the allegations do not warrant relief, let alone an evidentiary hearing." *People v. Duvall*, 9 Cal.4th

18  at 474.

19        Here, Petitioner failed to raise, in his direct appeal to the California Supreme Court, his

20  claim that the trial court violated his effective self-representation rights. (Lodgment 6.) Instead, he

21  only raised the issue in his state collateral attacks. The California Supreme Court denied Petitioner's

22  claim by invoking the *Dixon* bar as well as the *Duvall* bar. Consequently, the claim is procedurally

23  barred in federal court.

24                                       **IV.**

25  **PETITIONER HAS FAILED TO MAKE A SHOWING THAT HE**
    **RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

26

27        Perhaps recognizing that the foregoing claim is procedurally barred, Petitioner raises the

28  claim by asserting that he received ineffective assistance of appellate counsel. He urges appellate

08-0854 J (CAB)

1    counsel was ineffective for failing to have raised, on direct appeal, the claim that his right to

2    effective self-representation was violated when the trial court revoked his jailhouse telephone

3    privileges. (Ground 3.)  The claim is without merit and the state courts considering the claim

4    properly applied controlling precedent to dispose of the claim.

5    **A.    Procedural Background**

6          As stated earlier, the Court of Appeal and California Supreme Court denied Petitioner's

7    effective self-representation claim on procedural grounds.  The courts cited the *Dixon* bar because

8    Petitioner had failed to raise the claim in his direct appeal.  Consequently, Petitioner sought to have

9    the claim reviewed through the lens of ineffective assistance of appellate counsel.  He filed a state

10   habeas petition in the Superior Court asserting the ineffective assistance of counsel claim.   In

11   rejecting the claim, the Superior Court explained that Petitioner had failed to show, as required under

12   *Strickland*[8], that appellate counsel's performance prejudiced him. (Lodgment 14 at 2-3.)

13         Petitioner then raised the same claim in a state habeas petition to the Court of Appeal.  The

14   Court of Appeal issued a comprehensive opinion rejecting the claim on its merits.   The court

15   explained,

16         To make a claim of ineffective assistance of appellate counsel, the petition must
         state facts and contain evidence to show: (1) the attorney's performance was
17         deficient; and (2) the deficiencies prejudiced the appellate result. (*Strickland v.
         Washington* (1984) 466 U.S. 668, 687; *Smith v. Robbins* (2000) 528 U.S. 259,
18         285; *In re Smith* (1970) 3 Cal.3d 192, 202.)

19         Here, Petitioner cannot show the appellate result would have been different had
         the issue been raised by counsel.  Petitioner makes no showing the telephone
20         privilege revocation order actually had any effect on his ability to work with his
         investigator.  The court's order applied only to telephone privileges, and there
21         is no showing Petitioner could not communicate with his investigator through
         other common means of communicating with defendants facing trial, such as
22         through confidential mail or jail visitation. Petitioner also fails to state what he
         would have had his investigator look into, and what further investigation would
23         reveal.  Moreover, Petitioner's claim that the trial court's order somehow
         hampered his investigation is belied by his own actions and representations at
24         trial.  ... [T]he court minutes reveal the following:

25         "The Defendant states that he has not seen his private investigator since the end
         of May, but that he is still ready to go to trial. Counsel for the people state that
26         they have additional Discovery, previously not disclosed to the defendant. . . .

27

28   _____

     8.   *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)

1
2
The defendant states that despite this, he is still ready to go to trial. The Court asks the defendant if he would like a continuance of the trial date. The defendant states he does not wish a continuance and wishes to go to trial today."

3
4
5
6
7
8
9
It is apparent that as of the day of trial, Petitioner believed no further investigation was necessary, and even declined further discovery from the district attorney and the court's offer to continue the case. Had Petitioner believed the court's revocation order was hampering his defense, he would have raised that before agreeing to proceed, and would have taken the extra time offered by the court to attempt to further communicate with his investigator or otherwise complete further preparation for trial. Petitioner therefore did not believe he was prejudiced the day of trial, and we decline to conclude he was prejudiced at this time, nearly two and one-half years after Petitioner made his decision. Because Petitioner cannot establish he was prejudiced, his claim of ineffective assistance of appellate counsel fails. (*Smith v. Robbins, supra*, 528 U.S. at p. 285.)

10
11
12
13
Finally, we note that Petitioner elected to represent himself at trial, and we upheld on appeal the trial court's granting of Petitioner's motion to represent himself. *(People v. Grimes* (Oct. 24, 2006, D047240) [nonpub. opn.].) The revocation of telephone privileges, and any alleged shortcomings in his investigation were caused by Petitioner himself, and Petitioner cannot premise a claim of ineffective assistance of counsel on his own actions. (*Faretta v. California* (1975) 422 U.S. 806, 834, fn. 46.)

14
15
16
(Lodgment 16.) Following the Court of Appeal's denial of his habeas petition, Petitioner filed a petition for review in the California Supreme Court. The high court summarily denied the petition. (Lodgment 18.)

17
**A.    Discussion**

18
19
20
21
22
23
24
25
It is well settled that "entitlement to federal habeas relief turns on showing that the state court's resolution of [Petitioner's] claim of ineffective assistance of counsel under *Strickland*... 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' [Citation.]" *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). "Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, [citation], with performance being measured against an 'objective standard of reasonableness,' [citation] 'under prevailing professional norms.' [Citations.]" *Id.*

26
27
28
Here, it is evident the Court of Appeal applied the correct standard in evaluating Petitioner's claim of ineffective assistance of counsel; the court properly analyzed Petitioner's claim under the *Strickland* standard. Further, the court's application of the *Strickland* standard was

1   reasonable in concluding that Petitioner had failed to demonstrate prejudice from appellate counsel's

2   refusal to raise the effective self-representation claim on direct appeal. As the Court of Appeal

3   observed, Petitioner's claim of prejudice is belied by his own actions at trial in which he never

4   requested a continuance, never claimed a need for further communications with his investigator, and

5   affirmatively stated he wanted to proceed with trial forthwith. In light of this record, appellate

6   counsel reasonably concluded there was no merit in raising the effective self-representation claim

7   on appeal; it would have been impossible, in light of the record, to demonstrate that the trial court's

8   revocation of Petitioner's jailhouse telephone privileges somehow resulted in prejudice.

9       Further, Petitioner fails to appreciate that appellate counsel, having reviewed the trial

10  record, omitted frivolous claims in favor of focusing on those claims that stood the best chance of

11  enjoying possible success. Indeed, the "process of 'winnowing out weaker claims on appeal and

12  focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark

13  of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed.

14  2d 434 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 754, 103 S. Ct. 3308, 77 L. Ed. 2d 987

15  (1983)).

16      In sum, Petitioner has failed to carry his burden of showing that the state courts

17  unreasonably applied *Strickland* in disposing of his ineffective assistance of appellate counsel claim.

18                                         **V.**

19  **PETITIONER'S CLAIM THAT HIS SENTENCE VIOLATED *CUNNINGHAM* IS PROCEDURALLY BARRED**

20      Finally, Petitioner asserts that his upper-term sentence violated *Cunningham*. (Ground 4).

21  This claim is procedurally barred.

22      Petitioner originally raised the upper term issue under *Blakely* to the California Court of

23  Appeal and Supreme Court. Both courts noted that *Cunningham* was pending in the United States

24  Supreme Court when they denied Petitioner's claims. The California Supreme Court specifically

25  stated that its denial of the petition for review was without prejudice to any relief *Cunningham* might

26  later afford Petitioner.

27      The United States Supreme Court decided *Cunningham* on January 22, 2007. After that

28  date, Petitioner filed state habeas petitions in the Superior Court (Lodgment 13), Court of Appeal

08-0854 J (CAB)

1    (Lodgment 15), and Supreme Court (Lodgment 11).  Additionally, Petitioner appealed the Court of

2    Appeal's habeas decision (Lodgment 16) in a petition for review to the Supreme Court (Lodgment

3    17).  Petitioner did not assert the *Cunningham* issue in any of these successive petitions.  He only

4    raised the issue in his last habeas petition in the Superior Court, filed on January 11, 2008.

5           The Superior Court denied the petition on procedural grounds on February 22, 2008.  The

6    court explained,

7              *Cunningham* was decided on January 22, 2007.  Since then, Petitioner has filed
               one habeas corpus petition in this court, one habeas corpus petition in the Court
8              of Appeal (D051713) and at least one habeas corpus petition in the California
               Supreme Court (S150461).  Petitioner could have raised his current claim in any
9              of those petitions, considering that the Court of Appeal put Petitioner on notice
               that *Cunningham* might provide him an avenue of relief.  Petitioner fails to
10             explain to this court why he did not raise his current claim in an earlier petition.
               Accordingly, Petitioner's claim is denied.  (See *In re Clark* (1993) 5 Cal.4th
11             750, 767-775 [unless a Petitioner can justify the filing of numerous habeas
               corpus petitions, the reviewing court may summarily deny the current petition
12             in its entirety]; see also, *In re Robbins* (1998) 18 Cal.4th 770, 780.)

13        (Lodgment 20 at 2.)

14           Petitioner has not raised the *Cunningham* claim in the California Supreme Court and,

15   therefore, the claim is unexhausted.  However, the claim is also procedurally defaulted because of

16   the successive state habeas petitions Petitioner filed without raising the claim.  The Superior Court

17   specifically invoked California's successive petitions rule in denying habeas relief.  (Lodgment 20

18   at 2.)

19           As stated earlier, a federal court may not review a claim if the decision of the state court

20   rests on a state law ground that is independent of the federal question and is adequate to support it.

21   In other words, in all cases in which a state prisoner has defaulted his federal claim in state court

22   pursuant to an independent and adequate state procedural rule, federal habeas review of the claim

23   is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result

24   of the alleged violation of federal law, or demonstrate that failure to consider the claim will result

25   in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. at 750; *Poland v. Stewart*,

26   169 F.3d 573, 577 (9th Cir. 1998).  Petitioner has not demonstrated cause for his failure to raise the

27   *Cunningham* claim in an earlier state habeas petition.  Further, he cannot demonstrate a fundamental

28   miscarriage of justice because he cannot establish actual innocence of the crimes for which he was

1   miscarriage of justice because he cannot establish actual innocence of the crimes for which he was

2   convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992).

3        A habeas Petitioner who has failed to meet the state's procedural requirements for

4   presenting a federal claim has deprived the state courts of an opportunity to address that claim in the

5   first instance, just as a Petitioner who has failed to exhaust state remedies. *Coleman v. Thompson*,

6   501 U.S. at 732; *see also Harris v. Reed*, 489 U.S. at 265-66 (state court must, however, clearly and

7   expressly invoke the default by providing a "plain statement" of default). "While a habeas Petitioner

8   can file identical claims in successive levels of California courts, he or she generally gets only 'one

9   bite at the apple' in each court because California has established a 'general rule' that 'all known

10  claims' must be presented in a single application to a given court." *Gaston v. Palmer*, 417 F.3d

11  1030, 1037 (9th Cir. 2005), revised at 447 F.3d 1165, 1167 (9th Cir. 2006) (citing *In re Clark*, 5

12  Cal.4th at 797).

13       Because Petitioner has defaulted his *Cunningham* claim which is also unexhausted, he

14  cannot obtain relief in this Court. *See* 28 U.S.C. § 2254(b).

15                              **CONCLUSION**

16       For the foregoing reasons, Respondent respectfully requests that the Petition for Writ of

17  Habeas Corpus be denied, the proceedings be dismissed with prejudice without an evidentiary

18  hearing, and that no certificate of appealability be issued from the denial of the writ.

19       Dated:  August 28, 2008

20                         Respectfully submitted,

21                         EDMUND G. BROWN JR.
                           Attorney General of the State of California
22                         GARY W. SCHONS
                           Senior Assistant Attorney General
23                         PAMELA RATNER SOBECK
                           Supervising Deputy Attorney General
24                         ANTHONY DA SILVA
                           Deputy Attorney General
25

26                         **/s/ CHRISTOPHER P. BEESLEY**

27                         CHRISTOPHER P. BEESLEY
                           Deputy Attorney General
28                         Attorneys for Respondent

SD2008700453

08-0854 J (CAB)

17

1

2 ## DECLARATION OF SERVICE BY U.S. MAIL

3 Case Name:   **Grimes v. Tilton**

4 No.:            **08-0854 J (CAB)**

5 I declare:

6 I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or

7 older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United

8 States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States

9 Postal Service that same day in the ordinary course of business.

10 On August 28, 2008, I served the attached **MEMORANDUM OF POINTS AND
AUTHORITIES,** by placing a true copy thereof enclosed in a sealed envelope with postage

11 thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General
at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as

12 follows:

13 Dennis J. Grimes
CDC # V90377

14 Tallahatchie County
Correctional Facility

15 415 U.S. Hwy. 49 North
Tutwiler, MS 38963

16
*In pro per*

17

18

19 I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on August 28, 2008, at San Diego, California.

20

21             B. Trigueros

22 _____          _____
              Declarant                          Signature

23 70134800.wpd

24

25

26

27

28